The STATE of Ohio, Appellee,

v.

CRESS, Appellant.

[Cite as State v. Cress, 163 Ohio App.3d 46, 2005-Ohio-4620.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–04–42

Decided Sept. 6, 2005.

Kevin P. Collins, for appellant.

Jim Slagle, Marion County Prosecuting Attorney, for appellee.

---

BRYANT, Judge.

{¶ 1} Defendant-appellant, Shawn Cress, brings this appeal from the judgment of the Court of Common Pleas of Marion County, finding him guilty of intimidation in violation of R.C. 2921.04(A).

{¶ 2} On April 26, 2003, Cress and his girlfriend, Tara Thacker, were having an argument. Tara refused to allow Cress access to her home. Cress lived in the duplex next to Tara's and decided to enter her home via an attic access panel. Hearing a noise in her home, Tara and a friend investigated. Upon opening the closet door, Tara saw Cress in the closet of her home. Tara shut the door and called the police. Cress returned to his own home via the attic-access panels.

{¶ 3} The police officers interviewed Tara and her guests and were informed that the intruder was Cress. The officers then went next door to speak with Cress. Cress did not respond to the knocks of the officers. A search warrant was then obtained. The officers again knocked and received no response. At that point, the officers kicked in Cress's door, where they found Cress in bed. Cress was arrested and transported to jail. At 5:50 a.m., Cress called Tara from the jail. During the conversation, Cress told Tara that if she did not get him in trouble, he would not disclose her drug use. Between 5:43 a.m. and 11:56 a.m., Cress placed seven calls to family members. Cress was warned that these calls were being recorded. During those calls, Cress repeatedly told his family members to threaten Tara with the loss of her children, her dog, her home, and with the exposure of her alleged drug use if she did not go to the police and tell them that she had lied. The family members refused to tell Tara of his threats, and Tara testified that she did not know of the threats.

{¶ 4} On June 1, 2004, a jury trial was held on the charges of burglary, attempted burglary, intimidation, retaliation, and extortion. The jury found Cress not guilty of all of the charges except intimidation. On July 28, 2004, a sentencing hearing was held, and Cress was sentenced to three years of community control sanctions, including 60 days in jail. Cress appeals from the conviction on the intimidation charge and raises the following assignments of error.

The record contains insufficient evidence to support [Cress's] conviction for intimidation.

[Cress's] conviction for intimidation is contrary to the manifest weight of evidence.

The trial court erred to the prejudice of [Cress] by permitting Donna Thomas to testify.

{¶ 5} In the first assignment of error, Cress claims that the evidence was insufficient to show that he made an unlawful threat of harm to intimidate Tara. "When a defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Johnson* (2000), 88 Ohio St.3d 95, 112, 723 N.E.2d 1054. Cress was charged with intimidation of a witness.

No person, knowingly * * * by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges * * *.

R.C. 2921.04(B). No statutory definition of "unlawful threat of harm" has been provided. In that case, the terms are to be given their common, everyday meaning. *State v. Myers* (Mar. 30, 2000), 3d Dist. No. 7–99–05, 2000 WL 327238. "Unlawful" is defined as "[t]hat which is contrary to, prohibited, or unauthorized by law." Id. (citing Black's Law Dictionary (6th Ed.1990) 1536). "Accordingly, 'unlawful acts being threatened may be said to be unlawful threats.' " *State v. Thomas*, 6th Dist. No. L–02–1375, 2004-Ohio-6458, 2004 WL 2785292. Since the adjective "unlawful" modifies "threat," the common meaning would be to find that the threat must be unlawful.

{¶ 6} In this case, Cress made the following threats: (1) to expose nude photos of Tara; (2) to show children services pictures of people using illegal drugs in Tara's basement; (3) to make Tara get rid of her dog, which is prohibited by her lease; (4) to make Tara get rid of the additional people living in her home, who are prohibited by her lease; (5) to report to rental agencies the property of theirs that Tara was retaining; (6) to deny Tara the right to drive his car; and (7) to stop preventing the eviction of Tara when she was late with her rent. While these threats may be distasteful, they are not threats of unlawful conduct. Every one of these threats consists of conduct that Cress had a right to engage in. Without a showing of an express or implied threat of unlawful conduct, there can be no finding that Cress is guilty of intimidation.[1] *State v. Gooden*, 8th Dist. No. 81320, 2003-Ohio-2864, 2003 WL 21290932 at ¶ 27. Thus, the first assignment of error is sustained.

---

1. In its appellate brief, the state claims that Cress did commit unlawful conduct by his threats because they violate the statute of coercion. However, this issue was not raised before the trial court, nor was Cress charged with coercion. It may not be raised for the first time on appeal.

{¶ 7} The second assignment of error claims that the conviction on the intimidation charge is against the manifest weight of the evidence. Having found that the evidence is insufficient to sustain the conviction, we need not address the question of manifest weight.

{¶ 8} Finally, Cress claims that the trial court erred by permitting the testimony of Donna Thomas. Thomas is the victims' rights manager with Turning Point, a battered-women's shelter. She is an expert on domestic violence and testified concerning the various forms of abuse and stalking. She also testified that victims typically leave the relationship five to seven times before making a complete break. She then testified as to the patterns of victims of domestic violence in recanting their reports of abuse and as to stalking activities. Thomas had no knowledge of the relationship between Tara and Cress and has never met them. She testified that she had no information upon which to form an opinion about their relationship. Cress claims that this testimony was irrelevant and should have been excluded.

{¶ 9} Relevant evidence is any evidence that tends to make the existence of a fact of consequence more or less probable. Evid.R. 401. Evidence that is not relevant is not admissible. Evid.R. 402. In this case, the trial court permitted an expert on domestic violence to testify in order for the jury to determine whether Tara is a victim of domestic violence. However, no charge of domestic violence was filed. Thomas could not provide any insight into the relationship between Tara and Cress because she had never met them and was not familiar with their circumstances. She testified that she was unable to form an opinion as to whether Tara was a victim of domestic violence.

{¶ 10} The state also claims that the testimony was necessary to show why Tara recanted her decision to proceed with the complaint. However, no recantation of the incident was made. Tara admitted that she had called the police and that Cress had entered her home. She never denied any of the events. Instead, she merely stated that she did not wish the charges to proceed after the police were called. Thus, the testimony of Thomas is not relevant to the charges before the jury. The third assignment of error is sustained.

{¶ 11} The judgment of the Court of Common Pleas of Marion County is reversed, and the cause is remanded.

Judgment reversed
and cause remanded.

SHAW, J., concurs in judgment only.

CUPP, P.J., concurs in part and dissents in part.

CUPP, Presiding Judge, concurring in part and dissenting in part.

{¶ 12} I concur in the judgment reached by the majority but only for the reasons ascribed to the third assignment of error.

{¶ 13} I am compelled to dissent, however, from the majority's conclusion that Cress's conduct did not constitute the crime of intimidation of a witness. The statute prohibiting intimidation of a witness provides:

> No person, knowingly * * * by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges * * *.

R.C. 2921.04(B). The majority concludes that the threats made by Cress, for the purpose of getting Tara to go to the police and tell the police that she had lied about Cress's conduct, are not *"unlawful* threat[s] of harm." I cannot agree with this holding.

{¶ 14} The conduct with which Cress attempted to threaten Tara would clearly create harm to Tara: possible loss of her children to children services, loss of her pet dog, civil or criminal charges for unauthorized retention of rental property, eviction, and embarrassment from the release of nude photos. At a minimum, threatening someone with disclosure of information that would subject him or her to civil or criminal proceedings can fairly be said to be a threat of harm within the meaning of the statute.

{¶ 15} The harm threatened by Cress was for the purpose of forcing Tara to recant her previous statements about him to the police. Tara's recantation, if false, would be unlawful and could subject Tara to possible criminal charges for obstruction of official business or worse.

{¶ 16} I would hold, therefore, that Cress's conduct falls within the proscription of the statute. The threats made to Tara were clearly made for an improper purpose, which was to force her to do an improper act, i.e. make false statements to a law enforcement officer. Since the action that Cress attempted to intimidate Tara into taking was unlawful, the threat used to achieve it was concomitantly unlawful.

{¶ 17} Additionally, it is unlawful to make threats for the purpose of coercing one to take particular action. R.C. 2905.12(A) provides:

> No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall do any of the following: * * *
>
> (2) Utter or threaten any calumny against any person;

(3) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, to damage any person's personal or business repute, or to impair any person's credit;

(4) Institute or threaten criminal proceedings against any person * * *.

{¶ 18} Cress's threats encompassed several of these characteristics.[2]

---

**2.** Because the state was the prevailing party at the trial court level, the relationship of the crime of coercion to the crime of intimidation in determining whether the threats made by Cress were "unlawful" within the meaning of the intimidation statute would not have arisen. Hence, appellee could not have waived the argument in the trial court.